IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

No.  04-5143

DANIEL W. MAHON,
Plaintiff-Appellant,
vs.
AMERICAN AIRLINES, INC.,
Defendant-Appellee.

On Appeal from the United States District Court
for the Northern District of Oklahoma

The Honorable James O. Ellison

BRIEF OF DEFENDANT-APPELLEE
AMERICAN AIRLINES, INC.

DAVID R. CORDELL, OBA #11272
JASON S. TAYLOR, OBA #17755

OF COUNSEL:                           3700 First Place Tower

CONNER & WINTERS                      15 East 5th Street
3700 First National Tower             Tulsa, Oklahoma 74103-4344
15 East 5th Street                    (918) 586-5711 (Telephone)
Tulsa, Oklahoma 74103-4344            (918) 586-8547 (Facsimile)
(918) 586-5711

                                      Attorneys for Defendant-Appellee
                                      AMERICAN AIRLINES, INC.

Statement Regarding Oral Argument

Defendant-Appellee American Airlines, Inc. does not request oral argument.

# CORPORATE DISCLOSURE STATEMENT

The undersigned, counsel of record for Defendant-Appellee American Airlines, Inc., furnishes the following pursuant to Fed. R. App. P. 26.1:

1.      Counsel in this case, David R. Cordell and Jason S. Taylor of Conner & Winters, LLP, represent American Airlines, Inc. in this matter.

2.      The parent corporation of American Airlines, Inc. is AMR Corporation ("AMR").

3.      AMR owns 100% of American Airlines, Inc.'s stock.  AMR has no stockholders that are publicly held companies that own 10% or more of its stock.

4.      Conner & Winters, LLP is the only law firm expected to appear on behalf of American Airlines, Inc. in this action.


_____
/s/Jason S. Taylor
Counsel for American Airlines, Inc.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................iv

STATEMENT OF RELATED CASES ...................................................................iv

I.      STATEMENT OF JURISDICTION ..............................................................1

II.     STATEMENT OF THE ISSUE ......................................................................1

III.    STATEMENT OF THE CASE .......................................................................1

IV.     STATEMENT OF THE FACTS .....................................................................2

V.      SUMMARY OF ARGUMENT ......................................................................6

VI.     ARGUMENT...................................................................................................7

        A.      STANDARD OF REVIEW .................................................................7

        B.      AMERICAN IS ENTITLED TO SUMMARY JUDGMENT
                BECAUSE MAHON'S §1981 CLAIM FAILS AS A MATTER
                OF LAW...............................................................................................8

                1.      Mahon Cannot Establish a *Prima Facie* Claim of Reverse
                        Discrimination Under §1981 ...................................................10

                        a.      American Is Not One of the Rare Employers
                                Which Discriminates Against the Majority (or the
                                Minority).......................................................................10

                        b.      American Did Not Treat Similarly Situated Non-
                                White Employees More Favorably Than Mahon...........14

                2.      American Terminated Mahon For Legitimate Non-
                        Discriminatory Reasons And Mahon Cannot Show
                        That Reason Was A Pretext For Racial
                        Discrimination .........................................................................17

VII.    CONCLUSION        ........................................................................................18

VIII.   STATEMENT REGARDING ORAL ARGUMENT ..................................18

IX.     CERTIFICATE OF COMPLIANCE ............................................................19

X.      CERTIFICATE OF SERVICE.......................................................................19

## TABLE OF CASES, STATUTES & OTHER AUTHORITIES

<u>Page</u>

## <u>CASES</u>

<u>Abercrombie v. city of Catoosa</u>, 896 F.2d 1228 (10th Cir. 1990).....................7

<u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883 (2nd Cir. 1987)..............................8

<u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,</u> 912 F.2d 1238
(10th Cir. 1990)............... .................................................................................8

<u>Aramburu v. The Boeing Co.</u>, 112 F.3d 1398 (10th Cir. 1997) .........................13

<u>Bandlow v. James</u>, 545 F.Supp. 658 (W.D. Mo. 1982).....................................13

<u>Bellairs v. Coors Brewing Co.</u>, 907 F.Supp. 1448 (D. Colo. 1995),
<u>aff'd</u>, 107 F.3d 880 (10th Cir. 1997)..............................................................10, 14

<u>Daniels v. Murphy</u>, 528 F.Supp. 2 (E.D. Okla. 1978)......................................12

<u>Gossett v. Oklahoma ex rel. Board of Regents</u>, 245 F.3d 1172 (10th Cir.
2001) .............................................................................................................14

<u>Griess v. Colorado</u>, 841 F.2d 1042 (10th Cir. 1988) .........................................8

<u>Mahon v. American Airlines, Inc.</u>, 71 Fed.App. 32, 2003 WL 21733131
(10th Cir. 2003)............... .................................................................................iv

<u>McAlester v. United Air Lines, Inc.</u>, 851 F.2d 1249 (10th Cir. 1988)...............10

<u>McDonald v. Santa Fe Trail Transp. Co.</u>, 427 U.S. 273, 96 S.Ct. 2574,
49 L.Ed.2d 493 (1976).... .................................................................................8

<u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36
L.Ed.2d 668 (1973)......... .............................................................................9, 13

<u>Notari v. Denver Water Dept.</u>, 971 F.2d 585 (10th Cir. 1992)..........................9, 11

<u>Poston v. Reliable Drug Stores, Inc.</u>, 783 F.Supp. 1166 (S.D. Ind. 1992)........13

<u>Reynolds v. School District No. 1</u>, 69 F.3d 1523 (10th Cir. 1995) ....................8, 9, 10

<u>Seibert v. Oklahoma ex rel. Univ. of Okla. Health Sciences Ctr.</u>,
867 F.2d 591 (10th Cir. 1989) ...........................................................................8

<u>Swierkiewics v. Sorema N.A.</u>, 534 U.S. 506, 122 S.Ct. 998,
152 L.Ed.2d 1 (2002 ....... ...................................................................................9

## <u>STATUTES AND RULES</u>

42 U.S.C. §1981............. .................................................................................1, 6, 7, 8, 12,13

42 U.S.C. §1983............. ...................................................................................iv

42 U.S.C. §1985............. ...................................................................................iv

Fed.R.App.P. 26.1 ......... .................................................................................i

Fed.R.Civ.P. 8(a)(2)........ ...................................................................................9

Fed.R.Civ.P. 56(c) .......... .................................................................................7

## STATEMENT OF RELATED CASES

This is Mahon's second appeal. Mahon's first appeal was decided on July 28, 2003 in *Mahon v. American Airlines, Inc.*; 71 Fed. App. 32, 2003 WS 21733131 (10th Cir.), affirming the District Court's Fed. R. Civ. P. 12(b)(6) dismissal of Mahon's claims for (i) breach of contract; (ii) denial of due process as guaranteed by the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1983 and 1985; (iii) denial of free speech as guaranteed by the First Amendment and § 1983; (iv) denial of equal protection of the laws as guaranteed by the Fifth and Fourteenth Amendments; (v) intentional infliction of mental distress; (vi) negligent infliction of mental distress; and (vii) intentional interference with contractual relations.

After remand and discovery, American filed a motion for summary judgment on Mahon's lone remaining claim for reverse discrimination under § 1981 which was granted by the Honorable Judge James O. Ellison. Mahon appeals this summary judgment order.

# I.  STATEMENT OF JURISDICTION

Defendant-Appellee American Airlines, Inc. ("American") accepts Plaintiff-Appellant Daniel W. Mahon's ("Mahon") Statement of Jurisdiction.

# II.  STATEMENT OF THE ISSUE

Whether the District Court erred in granting American's Motion for Summary Judgment on Mahon's equal protection claim of reverse discrimination under 42 U.S.C. § 1981.

# III.  STATEMENT OF THE CASE

Mahon, a white male, is a former mechanic at American who has a history of involvement with white supremacist groups.  Mahon manifested his white supremacist views in the workplace by authoring and distributing a pamphlet at American which espoused a message of racial superiority and by wearing a t-shirt depicting the cover of the "Turner Diaries", a book advocating racial warfare and the violent overthrow of the government and infamous for being found in Timothy McVeigh's car following his arrest in connection with the Oklahoma City bombing.

Due to the repeated hostile and threatening conduct of Mahon and its impact on the work place, American instituted an investigation of Mahon and considered discharge pursuant to the applicable collective bargaining agreement (the "CBA").  As a result of this investigation, American

1

terminated Mahon for his violation of long standing written work rules which prohibit threatening and intimidating behavior towards other employees and conduct detrimental to other employees and American. Despite the fact that Mahon's termination was upheld following a several day long binding arbitration (at which he was represented by the Union and a lawyer), Mahon initiated the instant action.

## IV.   STATEMENT OF THE FACTS

The following facts are not in dispute[1].  Mahon, a white male, was employed by American from 1986 through May 10, 1999 at its Maintenance & Engineering base in Tulsa, Oklahoma (the "Base"). Doc. 33 at 2.  During his employment with American, Mahon was a member of the Transport Workers Union of America, AFL-CIO, Local 514 ("TWU").  Doc. 33 at 2. Mahon, a Federal Aviation Authority licensed Airframe and Powerplant mechanic, worked on Dock 2-B as an Avionics Technician at the time of his termination.   Doc. 33 at 2.

Mahon is the identical twin brother of Dennis Mahon.  Dennis Mahon is the former Imperial Dragon of the Missouri Ku Klux Klan and is the founder of the White Aryan Resistance.  Doc. 33 at 2.  While renting a room

---

[1]In Appellant's Brief, Mahon does not dispute any of the District Court's factual findings.

from Mahon, Dennis operated the "Dial-A-Racist" hotline from the Mahon premises.  Doc. 33 at 2.

Mahon admits that American prohibits discrimination, including that against white employees, and American promotes diversity among its workforce.  Doc. 33 at 2.  Mahon admits that the majority of employees at American during his employment were white.  Doc. 33 at 2.  All of Mahon's managers, supervisors and crew chiefs at American were white.  Doc. 33 at 2.

In connection with American's corporate diversity program to promote tolerance and respect among its diverse workforce, American employees organized Employee Resource Groups ("ERG") which represented various racial, ethnic, cultural or lifestyle groups, including, but not limited to: (1) the African-American ERG; (2) the Asian Culture Association; (3) the Christian ERG; (4) Employees with Disabilities ERG; (5) the Gay, Lesbian, Bisexual and Transgender ERG; (6) the Jewish ERG; and (7) the Caucasian ERG ("CERG").  Doc. 33 at 3.  Every ERG was required to support company policies on harassment-free workplace and non-discrimination.   In March, 1999, Mahon became a member of the CERG.  Doc. 33 at 3.

American sponsored Diversity Fairs to promote diversity and to provide a forum for every ERG to provide information about their particular group.  On March 11, 1999, a Diversity Fair was held at the Base. In connection with its participation in the Diversity Fair, CERG distributed an informational pamphlet at its two booths.  Doc. 33 at 3.  Mahon prepared the pamphlet and did so without any assistance from other CERG members.  Doc. 33 at 3.

Within hours of its distribution, American received a strong negative response to the CERG pamphlet from a variety of employees, including African-Americans, who reported to management that they were concerned and upset that such offensive material was distributed at the Base.  Doc. 33 at 3.  On March 25, 1999, American suspended CERG's privileges for six months for distributing the offensive pamphlet.  Doc. 33 at 3.

On April 20, 1999, a scheduled meeting was held to explain to CERG members American's decision to suspend CERG.  Doc. 33 at 3-4.  Robert Hosey (an African-American), Manager of Diversity, directed the meeting which was attended by other management representatives, including the vice president in charge of the Base.  Doc. 33 at 4.  Mahon attended the April 20th meeting wearing a "Turner Diaries" t-shirt.  During the meeting, Mahon acknowledged authoring the CERG pamphlet.  Doc. 33 at 4.

The front of the "Turner Diaries" t-shirt worn by Mahon to the meeting depicts a man aiming a rifle.  Doc. 33 at 4.  Mahon admits that the beliefs expressed in the Turner Diaries are inappropriate for the workplace. Doc. 33 at 4.  Mahon knew at the time he wore the Turner Diaries t-shirt to the April 20th meeting that he risked offending those who were familiar with the book.  Doc. 33 at 4.

Following the April 20th meeting, American conducted an investigation of Mahon regarding the pamphlet and the wearing of the "Turner Diaries" t-shirt which included meetings with Mahon on April 26, 1999 and May 10, 1999.  Doc. 33 at 4.  On May 10, 1999, American terminated Mahon's employment.  Doc. 33 at 4.  Mahon was terminated by his superior, Greg Hall (a white employee) who was the Vice-President of Maintenance and Engineering at American Airlines, and who attended the CERG meeting on April 20, 1999.  Doc. 33 at 4-5.

Mahon filed a grievance under the CBA with the TWU regarding his termination.  Thereafter, a three day arbitration of Mahon's termination was held before the Tulsa Area Board of Adjustment (the "Board"). Regarding the "Turner Diaries", the Board remarked that:

> [t]he Turner Diaries is rank with tales of murder and terrorism based on the ethnic and racial matters reaped upon minorities. It also contains a virtual bomb making recipe used to create the source of "immense" damage reaped upon a government

building.  While technically fictitious, it is all too real to the
some 160 victims (and their families) of Timothy McVeigh.
Such references have a special significance in Oklahoma which
cannot immediately be appreciated by others from other areas
of the country.

Doc. 33 at 5.

The Board upheld Mahon's termination.  In doing so, the Board made

the following finding:

At the root of the conduct (Mahon's) was hate for blacks, Jews,
and other minorities.  This philosophy has no place being
expressed in the workplace.  This is especially true when the
Employer has engaged in so many efforts to establish a work
environment free from racial hostility and harassment.  Under
these circumstances, discharge was appropriate.

Doc. 33 at 5.

Mahon understood that an employee could be terminated for harassing

another employee because of their race or national origin.  Doc. 33 at 5.

Mahon testified that Tom Vinson (a white employee) is the person most

similarly situated to Mahon because he allegedly wore a "Turner Diaries" t-

shirt to work and Vinson was not disciplined because of the shirt.  Doc. 33 at

5.

## V.    SUMMARY OF ARGUMENT

In his Complaint, Mahon alleges that American's termination of his

employment violated 42 U.S.C.A. §1981.  Doc. 1 at 3-4. According to the

Complaint, American treated Mahon "unequal to others who were similarly

situated, for which Plaintiff has suffered injury." Doc. 1 at 4. However, as set forth below, Mahon's §1981 claim fails as a matter of law because he cannot establish a *prima facie* case of reverse discrimination. American did not terminate Mahon because he is white. Instead, American terminated Mahon because he interjected messages of racial violence into the workplace and he exhibited threatening and intimidating actions. Indeed, the undisputed facts demonstrate that American terminated Mahon for legitimate non-discriminatory reasons.

## VI.    ARGUMENT

### A.    <u>Standard of Review</u>

This Court's review of the District Court's entry of summary judgment on Plaintiff's claims is *de novo*, applying the same standard as the District Court under Fed.R.Civ.P. 56(c). *Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230 (10th Cir.1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Once the moving party shows it is entitled to summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that

there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). This Court may affirm the District Court's grant of summary judgment " 'on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.' " *Griess v. Colorado,* 841 F.2d 1042, 1047 (10th Cir.1988) (*per curiam*) (quoting *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987)); *see also Seibert v. Oklahoma ex rel. Univ. of Okla. Health Sciences Ctr.,* 867 F.2d 591, 597 (10th Cir.1989).

**B.    AMERICAN IS ENTITLED TO SUMMARY JUDGMENT BECAUSE MAHON'S § 1981 CLAIM FAILS AS A MATTER OF LAW**

Section 1981 prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the employment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981. To make a claim under §1981, the parties and the District Court acknowledge that Mahon must show that American intentionally or purposefully discriminated against him based upon his race.[2] *Reynolds v. School District No. 1*, 69 F.3d 1523, 1533 (10th

---

[2] The Supreme Court has interpreted §1981 to prohibit the discrimination against white persons in contractual matters because of their race. *See, McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287, 96 S.Ct. 2574, 2582, 49 L.Ed.2d 493 (1976)("… §1981 is applicable to racial discrimination in private employment against white persons.")

Cir. 1995).  Mahon may attempt to make such a showing with direct evidence of intentional discrimination or he may rely on circumstantial evidence.  *Id*.  Mahon did not present (and could not present) any direct evidence to demonstrate that American terminated Mahon because he is white.  Further, with respect to circumstantial evidence, the District Court correctly determined that Mahon cannot establish a *prima facie* showing of reverse discrimination.

In *Notari v. Denver Water Dept.*, 971 F.2d 585, 588-590 (10th Cir. 1992), the Tenth Circuit adopted the so-called *McDonnell-Douglas* burden-shifting analysis set forth by the U.S. Supreme Court in analyzing reverse discrimination cases based upon circumstantial evidence.  *See*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under this scheme, the plaintiff must first establish a *prima facie* case of discrimination "in order to survive summary judgment."  *Reynolds*, 69 F.3d at 1533.[3]  If the plaintiff carries this burden, the burden shifts to the defendant to articulate a facially non-discriminatory reason for the challenged employment action.  *Id*.  "If the defendant makes such a showing, the burden reverts to the plaintiff to prove that the defendant's proffered

---

[3] The requirement of establishing a *prima facie* case of reverse discrimination in order to survive summary judgment is distinguished from the pleading standard for such cases which merely requires notice pleading as set forth in Fed.R.Civ.P. 8(a)(2).  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 998,152 L.Ed.2d 1 (2002).

nondiscriminatory reason is pretextual, from which a jury may infer discriminatory intent." *Id*.

### 1. Mahon Cannot Establish a *Prima Facie* Claim of Reverse Discrimination Under §1981.

To carry the initial burden of establishing a *prima facie* case of reverse discrimination, Mahon must show that: (i) background circumstances exist which support an inference that American is one of those unusual employers that discriminates against the majority; and (ii) American treated similarly situated non-white employees more favorably. *See*, *Bellairs v. Coors Brewing Co.*, 907 F.Supp. 1448, 1456 (D. Colo. 1995), aff'd, 107 F.3d 880 (10th Cir. 1997)(citing *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir. 1988)).   However, the undisputed facts overwhelmingly prevent Mahon from establishing either of the elements.

### a. American is Not One of the Rare Employers Which Discriminates Against the Majority (or the Minority).

As a white person, Mahon is not entitled to the presumption of discrimination afforded to a member of an ostensibly disfavored minority class.  *See*, *Reynolds*, 69 F.3d at 1534.  Instead, Mahon "must identify background circumstances that would justify applying to a majority plaintiff the same presumption of discrimination afforded to a minority plaintiff who

10

establishes a prima facie case by showing that the defendant is one of those unusual employers who discriminate against the majority." *Id*.  To make such a showing, Mahon "must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Notari*, 971 F.2d at 590.

The difficulty of establishing this burden and the necessity of presenting evidence to establish specific facts giving rise to a presumption of discrimination is illustrated by the *Reynolds* failure-to-promote case.  In that case, Reynolds successfully identified background circumstances showing her employer, the defendant school district, to be one of those rare employers which discriminate against the majority.  *Reynolds*, 69 F.3d at 1534-35.  Reynolds met this burden by presenting specific facts showing her to be the only white employee in the otherwise all-Hispanic Bilingual/English as a Second Language Department and that Hispanic supervisors made the employment decisions at issue.  *Id*.  The *Reynolds* court also looked at the specific evidence demonstrating that the plaintiff did not receive the promotion at issue despite being well qualified for the position.  *Id*.  As a result, the unique racial composition of the Reynolds'

employer coupled with the racial make-up of her supervisors enabled the plaintiff to satisfy her difficult burden.

In contrast, the District Court found that Mahon has not alleged or produced any evidence to support specific facts that are sufficient to give rise to the inference that American is one of the rare employers which discriminate against the majority.  Doc. 33 at 9-10.  Moreover, the District Court found that Mahon has not submitted "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the Plaintiff's status the challenged employment decision would have favored the Plaintiff."  Doc. 33 at 10.  The District Court examined undisputed facts demonstrating that most of the employees, supervisors and crew chiefs were white and the supervisor who terminated Mahon was white and determined that such facts disprove the proposition that American was one of the unusual employers that discriminated against the majority. Doc. 33 at 10.

With respect to his termination, Mahon himself equivocates whether his termination would have occurred but for his status as a white person. Specifically, Mahon muses that the reasons for his termination ranged from his religious and political beliefs to his notorious racist brother's ideology and political activism.  Doc. 29 at 12.  However, a §1981 claim is limited

solely to racial discrimination.  *See*, *Daniels v. Murphy*, 528 F. Supp. 2 (E.D. Okla. 1978).   A §1981 claim is inapplicable to claims of discrimination based on political affiliation or religious discrimination. *See, Bandlow v. James*, 545 F.Supp. 658 (W.D. Mo. 1982)(§ 1981 does not apply to claims of discrimination based on political affiliation); *Poston v. Reliable Drug Stores, Inc.*, 783 F.Supp. 1166 (S.D. Ind. 1992)(§ 1981 does not apply to claims of religious discrimination).   Accordingly, "an animus not related to [Mahon's race] is not evidence of improper discrimination." *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1406 (10th Cir. 1997).

The record is devoid of any evidence suggesting that American is one of the rare employers which discriminates against white people.  It is hardly surprising that no such evidence exists because Mahon himself admits that American does not discriminate against whites.  Doc. 33 at 2.  Further, Mahon testified that American prohibits discrimination, including against white people, and that American promotes diversity among its workforce. Doc. 33 at 2.  Tellingly, Mahon knew that American could terminate an employee for harassing another employee because of their race or national origin.  Doc. 33 at 2.  As a result, Mahon cannot establish a *prima facie* case of reverse discrimination based upon circumstantial evidence because he

cannot satisfy his burden to establish the first prong under the *McDonnell-Douglas* analysis.

**b.    American Did Not Treat Similarly Situated Non-White Employees More Favorably Than Mahon.**

Mahon's attempt to meet the disparate treatment prong of the *McDonnell-Douglas* framework is as futile as the attempt to show that American is one of the rare employers that discriminate against whites. Under this prong, Mahon must establish that similarly situated *non-white* employees who engaged in similar conduct were treated differently than Mahon (*i.e.*, present evidence of non-white employees who exhibited bigoted tendencies in a fashion similar to the racially threatening and intimidating acts of Mahon and were neither disciplined nor terminated). *See*, *e.g.*, *Bellairs*[4], 907 F.Supp. at 1456.   Similarly situated employees include those who deal with the same supervisors and managers as Mahon and are subject to the same standards governing performance and discipline. *Gossett v. Oklahoma, ex. rel. Bd. of Regents*, 245 F.3d 1172, 1177 (10th Cir. 2001).

---

[4] In *Bellairs*, the plaintiff, in support of his disparate treatment claim, pointed to numerous white employees who committed gross misconduct and were not discharged. However, as with the instant case, the analysis properly focuses exclusively on whether the employer treated similarly situated *non-white* employees more favorably.  Further, the *Bellairs* plaintiff, like Mahon, was not able to identify any similarly situated non-white employees because the employees so identified engaged in alleged conduct that was distinguishable (and far less egregious) than the conduct at issue.  *Bellairs*, 907 F.Supp. at 1456.

Mahon cannot meet his standard because, as noted by the District Court, "none of the evidence shows that Mahon was treated differently than a *non-white* employee would have been under similar circumstances." Doc. 33 at 10 (emphasis added). The futility of Mahon's argument is evidenced by his insistence on using examples of how American treated *other white employees* as his supposed best evidence of disparate treatment. Specifically, during the Motion for Summary Judgment stage Mahon identified another white mechanic as being the most similarly situated to him. Doc. 31 at 7.

Likewise, to the extent Mahon attempted to meet his burden, his appeal brief primarily focuses on how American treated Mahon compared to other *white* employees. For example, Mahon identified two other *white* members of CERG that were not disciplined in connection with Mahon's activities as evidence of disparate treatment. Aplt. Brief at 11. Further, Mahon makes the absurd claim that he has "clearly" made a *prima facie* showing of reverse discrimination against American based on the fact that he was the only member of CERG (an employee resource group without any non-white members) to be terminated in connection with the pamphlet and its aftermath. Aplt. Brief at 11. However, Mahon's argument completely misses the mark and, as the District Court correctly found, does not provide

any evidence that American would have treated a non-white employee differently than it treated Mahon for engaging in similar conduct. Doc. 33 at 10.

The best Mahon can do with respect to non-white employees engaging in allegedly similar conduct as Mahon is the ambiguous and benign allegation that certain unidentified African-American employees wore a Malcolm X t-shirt or a "Black Panther" t-shirt to work and did not get fired. Aplt. Brief at 12. This meager allegation is insufficient to raise an inference of discriminatory conduct by American. Mahon has not produced any evidence or made any allegation that these unidentified individuals engaged in anything remotely similar to the racially threatening and bigoted conduct exhibited by Mahon. Indeed, the allegation involving Malcolm-X and Black Panther t-shirts is wholly insignificant when compared to the deliberate steps taken by Mahon to threaten and intimidate other employees. As found by the District Court, "Mahon's evidence falls drastically short of the reasonable probability that but for Mahon's race the challenged employment would have favored Mahon." Doc. 33 at 11.

> **2.     American Terminated Mahon For Legitimate Non-Discriminatory Reasons And Mahon Cannot Show That Reason Was a Pretext For Racial Discrimination.**

The District Court concluded that even assuming, *arguendo*, Mahon was successful in proving a *prima facie* case of reverse discrimination, Mahon's claim fails because American has articulated legitimate, non-discriminatory reasons for his termination. Doc. 33 at 11. As set forth in the Final Advisory, after a thorough investigation, American determined Mahon's actions created an "intimidating" and "hostile" work environment in violation of American's workplace rules and policies. Doc. 29 at 10. Further, the Final Advisory stated that "as an employer in an industry that must guarantee the highest standards of safety to the flying public…, American Airlines cannot and will not tolerate this type of conduct." Doc. 29 at 10. Indeed, the District Court properly found that "[W]hen the record, as a whole, is viewed in the light most favorable to Mahon, no reasonable fact finder could determine that American's termination of Mahon's employment because of his racially offensive conduct was only a pretext to discrimination because he is a Caucasian." Doc. 33 at 11. In fact, the record shows that such reasons were litigated before the Board which concurred with American's rationale for terminating Mahon. Doc. 33 at 5.

In contrast, there is no evidence in the record that American's stated reason for terminating Mahon was a pretext for racial discrimination. Tellingly, Mahon does not even allege in his appeal brief that American's reasons were pretextual. Mahon makes no effort to articulate this proposition because there is no basis to believe that American fired Mahon for any reason other than the fact that the company could not tolerate his racially threatening and hostile conduct in the workplace. Mahon's silence on this subject is conspicuous when compared to American's rational and persuasive proffered reasons for terminating Mahon. As a result, Mahon has wholly failed to meet his burden. Therefore, Mahon's claim must fail because he has not and cannot show that American's reasons were pretextual.

## VII.   CONCLUSION

After it carefully considered the record and the argument of the parties, the District Court entered a well-reasoned, twelve page opinion. The District Court's summary judgment in favor of American should be affirmed.

## VIII.  STATEMENT REGARDING ORAL ARGUMENT

American does not request an opportunity to present oral argument.

DAVID R. CORDELL, OBA  #11272
JASON S. TAYLOR, OBA #17755

OF COUNSEL:                          By:_____
                                          /s/Jason S. Taylor
CONNER & WINTERS                      3700 First Place Tower
3700 First Place Tower                15 East 5th Street
15 East 5th Street                  Tulsa, Oklahoma  74103-4344
Tulsa, Oklahoma  74103-4344           (918) 586-5711 (telephone)
                                      (918) 586-8547 (facsimile)
                                      jtaylor@cwlaw.com

                                      Attorneys for Defendant-Appellee,
                                      AMERICAN AIRLINES, INC.

## IX.    CERTIFICATE OF COMPLIANCE

Pursuant to Fed.R.App. 32(a)(7)(c), I certify that the attached brief of Defendant-Appellee American Airlines, Inc. is proportionally spaced, has a typeface of 14 points, and contains 4,277 words.

## X.    CERTIFICATE OF SERVICE

I hereby certify that on February _____, 2005, the original and seven copies of the Brief of Defendant-Appellee American Airlines, Inc. were sent to the Clerk of the Court by overnight courier; and a copy of the foregoing was served by overnight courier  and electronic mail to:

Robert E. Frazier, III
4150 S. 100th East Avenue, Suite 200-B
Tulsa, Oklahoma 74146
rfrazierlaw@sbcglobal.net

_____
/s/JASON S. TAYLOR